IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| LYNN K. MAURER,<br><br>        Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security Administration,<br><br>        Defendant. | Case No. 1:08-CV-128-SA<br><br><br><br>**MEMORANDUM DECISION AND ORDER** |

Before the court is an action filed by Plaintiff, Lynn K. Maurer, asking the court to reverse the final agency decision denying his application for Disability Insurance Benefits (hereafter "DIB") and Supplemental Security Income (hereafter "SSI") under Titles II and XVI of the Social Security Act.  *See* 42 U.S.C. §§ 401-433, 1381-83f.  Plaintiff now challenges the decision of the Administrative Law Judge (hereafter "ALJ") by arguing that it is legally erroneous and not supported by substantial evidence.

Having carefully considered the parties' memoranda and the complete record in this matter, the court concludes that the ALJ's decision is supported by substantial evidence and is free of reversible legal error and, therefore, is affirmed.

**BACKGROUND**

Plaintiff applied for DIB and SSI on June 15, 2005, alleging an inability to work since July 1, 2001.  (Docket Entry #8, the certified copy of the transcript of the entire record of the administrative proceedings relating to Lynn K. Maurer (hereafter "Tr. ___") 17, 132-34, 156, 375-80.)  His claims were denied initially and on reconsideration.  (Tr. 17, 40-41, 373-74.) Plaintiff then requested a hearing before an ALJ, which was held on September 20, 2007.  (Tr. 17, 38, 387-429.)

At the hearing before the ALJ, Plaintiff amended his alleged onset date to November 24, 2004, one day after the denial of his prior application for Social Security disability benefits.[1]  (Tr. 17, 390.)  On October 17, 2007, the ALJ issued a decision denying Plaintiff's claims, finding that he could perform both his past relevant work and other work existing in the national economy. (Tr. 17-27.)  On September 12, 2008, the Appeals Council denied Plaintiff's request for review (Tr. 5-8), and the ALJ's decision became the Commissioner's final decision.  *See* 20 C.F.R. §§ 404.981, 416.1481.  As such, Plaintiff has exhausted his administrative remedies and the case is ripe for judicial review. *See* 42 U.S.C. § 405(g).

---

[1]The denial of Plaintiff's previous application is not at issue here.  Plaintiff did not appeal the determination that he was not disabled as of November 23, 2004.  (Tr. 390.)

On October 24, 2008, after receiving the Appeals Council's denial of his request for review, Plaintiff filed his complaint and the case was assigned to United States District Judge Ted Stewart. (File Entry #3.) Defendant then filed his answer on December 29, 2008. (File Entry #5.) The parties consented to jurisdiction by a United States Magistrate Judge on January 14, 2009, and the case was referred to United States Magistrate Judge Samuel Alba pursuant to 28 U.S.C. § 636(c). (Docket Entries #12, 13.)

On February 20, 2009, Plaintiff filed his memorandum requesting that the Commissioner's decision be reversed or remanded. (File Entry #14.) Defendant filed his response memorandum on March 16, 2009. (File Entry #15.) On April 6, 2009, Plaintiff filed his reply memorandum. (File Entry #16.)

## STANDARD OF REVIEW

The court reviews the Commissioner's decision "to determine whether the factual findings are supported by substantial evidence and whether correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003); *accord Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The Commissioner's findings, "if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "'Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."'" *Doyal*, 331 F.3d at 760 (citations omitted). The court may "'neither reweigh the

3

evidence nor substitute [its] judgment for that of the agency.'" *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (citation omitted).

The court's review also extends to determining whether the Commissioner applied the correct legal standards. *See Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000). Besides the lack of substantial evidence, reversal may be appropriate where the Commissioner uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Secretary of Health and Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

## ANALYSIS

Plaintiff challenges the ALJ's decision by arguing it is not supported by substantial evidence and it is legally erroneous. Specifically, Plaintiff argues:  (1) the ALJ failed to include all of Plaintiff's limitations in his residual functional capacity (hereafter "RFC") assessment; (2) the ALJ failed to properly evaluate the opinion evidence of Plaintiff's physicians; (3) the ALJ failed to properly evaluate Plaintiff's testimony; and (4) the ALJ failed to consider the written statements of Plaintiff's niece, mother, and sister.  The court addresses each of these arguments in turn.

### A.   RFC Assessment

The court first examines Plaintiff's argument that the ALJ failed to include all of Plaintiff's limitations in his RFC assessment.

In his opinion, the ALJ explained that "[a]fter careful consideration of the entire record," the ALJ found that Plaintiff had the RFC "to perform an unlimited range of semiskilled or unskilled work at any exertional level, except that such work could not require":

> work at more than lower stress level, which
> means:
> > a low to average production rate of
> > work;
> > essentially no working with the general
> > public, and work only in small groups of
> > co-workers;
> > only minimal contact with supervisors
> > and co-workers on the job (but still
> > having the ability to respond
> > appropriately to supervision, co-workers
> > and work situations);
> > the ability to deal with only minimal
> > changes in a routine work setting;
> work at more than a low concentration level,
> which means the ability to be alert and
> attentive to (and to perform) unskilled and
> low end of semi-skilled work tasks;
> work at more than a low memory level, which
> means:
> > the ability to understand, remember and
> > carry out simple instructions or
> > instructions consistent with the low end
> > of semi-skilled work, utilizing GED
> > [General Educational Development] levels
> > of at least reasoning 2-3, math 2-3, and
> > language 2-3;
> > the ability to use appropriate judgment
> > in making simple or low end of
> > semi-skilled work-related decisions; and

> due to being deaf in the right ear, and a
> having [sic] a hearing loss in the left ear,
> he must be in work situations where he is
> allowed to be face to face to those he is
> talking to, so he can read lips, and ask
> others to speak up or repeat themselves if
> need be.

(Tr. 21-22.)

The ALJ expressly considered, in making these findings, "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p."  (Tr. 22.)  He also "considered opinion evidence in accordance with the requirements of 20 CRF 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p."  (Tr. 22.)

Plaintiff contends that the ALJ erred by allegedly failing to consider all of Plaintiff's impairments in assessing his RFC. Plaintiff argues the ALJ erred in his assessment regarding Plaintiff's physical and mental impairments.

## 1.  Physical Impairments

First, Plaintiff asserts that the ALJ failed to properly evaluate Plaintiff's physical limitations stemming from his blood clots and deep vein thrombosis.

The court has carefully reviewed the ALJ's decision and the record and concludes Plaintiff's argument lacks merit.  The ALJ specifically discussed Plaintiff's blood clots and deep vein thrombosis.  The ALJ noted that Plaintiff had been treated in

March and April 2004 for "superficial thrombophlebitis with a history of recurrent deep venous thrombosis." (Tr. 20.)  The ALJ found that, considering all of the medical evidence, especially focusing on the medical evidence from after Plaintiff's alleged onset date,[2] these ailments did not meet "the 12-month duration requirement to qualify as a severe impairment." (Tr. 20.)  The evidence supports the ALJ's decision.  In November 2005, objective testing showed only residual superficial thrombosis and "no evidence of deep venous thrombosis" in Plaintiff's leg.  (Tr. 343.)

Consistent with the objective medical findings, the other evidence in the record showed that Plaintiff's blood clotting did not cause any functional limitations during the relevant period. In February 2007, Dr. Graham opined that Plaintiff's physical impairments imposed no exertional, mechanical, or postural limitations (e.g., no limitations on Plaintiff's ability to sit, stand, stoop, bend, lift, carry, or use his arms and hands for repetitive movements).  (Tr. 360.)  In his disability reports, Plaintiff did not allege that any physical ailments impaired his ability to work; rather, he alleged only that he could not work because of his "mental illness."  (Tr. 156-66, 168-73.)

---

[2]The medical evidence from the period before Plaintiff's alleged onset date of November 24, 2004, is of very limited relevance here.

Similarly, in September 2005, Plaintiff reported to Dr. Truhn that the blood clots were no longer a problem.  (Tr. 290.)

Furthermore, at the administrative hearing, Plaintiff did not testify that blood clotting in his legs caused any functional limitations.  To the contrary, Plaintiff's counsel declared that "basically this is a mental case," rather than one alleging disability based on physical impairments.  (Tr. 390-92.)  "[W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored."  *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997).  Thus, neither the medical evidence nor Plaintiff's allegations revealed any functional limitations resulting from Plaintiff's physical ailments.  Accordingly, the ALJ did not err by declining to include physical restrictions in Plaintiff's RFC.

In his opening brief, Plaintiff faults the ALJ for not addressing medical evidence regarding Plaintiff's three blood clots occurring between November 2007 through March 2008; however, this evidence did not exist as of the date of the ALJ's October 2007 decision.  Plaintiff submitted the records regarding this new evidence that was not before the ALJ to the Appeals Council.  (Tr. 5-6.)

These new records could be relevant to an argument that the Appeals Council should have considered the records and granted

review of the ALJ's decision because they allegedly constituted "new and material evidence," 20 C.F.R. § 404.970(b); *see also Chambers v. Barnhart*, 389 F.3d 1139, 1142-44 (10th Cir. 2004); however Plaintiff did not present this argument in his opening brief.  Accordingly, he has waived this argument.  *See Anderson v. U.S. Dep't of Labor*, 422 F.3d 1155, 1182 n.51 (10th Cir. 2005) (where appellant failed to raise the argument in the opening brief, the argument was waived); *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994 (same); *see also Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (waiver principles developed in other litigation contexts are equally applicable to social security cases).

Even if Plaintiff had not waived this argument, this argument would fail because the new evidence was neither chronologically relevant nor material.  The Appeals Council need not consider new evidence unless "it relates to the period on or before the date of the administrative law judge hearing decision."  20 C.F.R. § 404.970(b).  As noted, Plaintiff's new medical records regarding the three blood clots related only to treatment received after the ALJ's decision.

Moreover, this new evidence was not material because there is no reasonable possibility that it would have changed the outcome.  *See Chambers*, 389 F.3d at 1144 (discussing the standard for materiality under § 404.970(b)).  These records show, at most, that his physical condition worsened over time (i.e., after

9

the ALJ's decision).  The records did not address Plaintiff's
condition at the time of the ALJ's decision.  The evidence
submitted to the ALJ revealed that Plaintiff had no significant
problems with blood clots at the time of the ALJ's decision.
(Tr. 290, 343, 360.)  As the Appeals Council explained, if
Plaintiff wished to assert that he became disabled at some point
after the ALJ's decision, his proper course of action would be to
apply for benefits again and allege a new onset date.  (Tr. 6.)
Finally, these new records related to Plaintiff's physical
impairments, which were not the basis of Plaintiff's disability
claim at the hearing before the ALJ.  As explained above,
Plaintiff asserted disability based on mental impairments.  (Tr.
156-66, 168-73, 391-92.)  For this additional reason, these new
records were not material.  *See Chambers*, 389 F.3d at 1144
(explaining that because, at the time of the ALJ's decision,
claimant did not cite a breathing disorder as causing her
disability, new evidence related to such a disorder had no
bearing on claimant's alleged disability).

## 2. Mental Impairments

     Second, Plaintiff argues that the ALJ erred by not properly
including Plaintiff's mental impairments in the RFC.

     Plaintiff's argument relies on his other arguments that the
ALJ did not properly assess the views of Plaintiff's physicians,
Plaintiff's credibility, or his family members' "testimony."  The
court addresses these other arguments below, and as explained

below, concludes that they lack merit.  Furthermore, the court has carefully reviewed the ALJ's RFC regarding Plaintiff's mental impairments and concludes that it is based on substantial evidence and is legally sound.

When formulating the RFC, the ALJ took into account many functional limitations related to Plaintiff's mental condition. The RFC was quite thorough and incorporated significant and specific limitations.  (Tr. 21-22.)  For example, the RFC did not require Plaintiff to interact with the general public or with many co-workers; it required that Plaintiff have only minimal contact with supervisors and co-workers on the job; and it required that Plaintiff only have to deal with minimal changes in a routine work setting.  In sum, the ALJ properly exercised his responsibility to determine Plaintiff's RFC.  *See Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("[T]he ALJ, not a physician, is charged with determining a claimant's [RFC] from the medical record."); 20 C.F.R. § 404.1546; SSR 96-8p.

In conclusion, viewing the record as a whole, the ALJ's RFC assessment is supported by substantial evidence and is legally sound.  As a result, the court rejects Plaintiff's argument challenging the ALJ's RFC assessment.

### B.  Physicians' Opinions

The court next addresses Plaintiff's argument that the ALJ failed to properly evaluate Plaintiff's physicians' opinions.

11

According to Plaintiff, the ALJ erred both in the weight he gave to Plaintiff's doctors' opinions and by failing to sufficiently indicate the weight given to these doctors' views. In particular, Plaintiff appears to argue that the opinions of Dr. Ghadban and Dr. Graham were entitled to controlling or substantial weight.  As the ALJ noted, Dr. Ghadban was a treating physician (Tr. 24); as Plaintiff acknowledges, Dr. Graham was an "examining physician."  In determining whether to give controlling weight to a treating physician's opinion, the ALJ must consider whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and whether the opinion is consistent with the other evidence in the record.  *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  An opinion's consistency with the record as a whole, the degree to which an opinion is supported by objective evidence, and the degree to which a medical source explains his or her opinion are factors which are considered in deciding what weight to assign to the opinion.  *See* 20 C.F.R. § 404.1527(d).

Regarding Dr. Ghadban, the ALJ discussed and credited almost all of the findings made by the doctor.  (Tr. 24-25, Tr. 371-372A.)  The ALJ adopted Dr. Ghadban's conclusions that: Plaintiff's biggest concerns were financial; he was attentive and coherent but sometimes laughed inappropriately; his affect was stable, restricted in range, and somewhat flat in intensity; he did not have delusions or hallucinations and was stable on his

12

psychiatric medication; and his depressive symptoms were mild. (Tr. 25, 372-72A.)  The only opinion of Dr. Ghadban that the ALJ did not accept was the notion that Plaintiff's GAF score was 40 in 2007.  (Tr. 25, 372A.)  The ALJ gave a detailed explanation for this decision:

> The actual symptoms reported [to Dr. Ghadban] are mild, with no significant indications of the severe psychotic condition the claimant alleges.  The stated and observed symptoms do not support the GAF of 40 by [Dr. Ghadban] unless you assume the symptoms reported at the time of the 2001 breakdown continue to be a problem.  But [Dr. Ghadban] states that the claimant is currently stable in terms of visual hallucinations and delusions and has been stable on psychiatric medication since his initial psychotic break in 2001. . . .
>
> The consultative psychologist [Dr. Truhn] said the claimant's GAF was 55 (a level that would allow for some work) . . . and indicated that the verbal reports did not reveal a significant number of symptoms. . . .
>
> I find that the preponderance of the credible evidence does not show that the claimant has mental impairment that is as functionally limiting as indicated by the GAF of 40 assessed by [Dr. Ghadban].  The actual observed behavior and the symptoms reported by the claimant were described as "mild" by [Dr. Ghadban].  The claimant's biggest concern was employment and money.

(Tr. 25).

Hence, the ALJ gave good reasons for failing to give controlling weight to Dr. Ghadban's opinion that Plaintiff's GAF score was 40.  *Cf. Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th

Cir. 2003).  Because the doctor's unexplained opinion was
inconsistent with his own findings, the ALJ acted properly.  *See
Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029
(10th Cir. 1994) (explaining fact that treating physician's
office notes did not support his later expressed opinion that
claimant was totally disabled was good reason to reject treating
physician's opinion).  Moreover, Dr. Ghadban's opinion on this
point was not entitled to significant weight because it was
merely conclusory, with no mention of functional limitations.
*See Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir. 1995);
*Castellano*, 26 F.3d at 1029 (treating physician's opinion may be
rejected if his conclusions are not supported by specific
findings).

Furthermore, contrary to Plaintiff's assertions, Dr. Ghadban
did not opine that Plaintiff was incapable of maintaining
employment.  Rather, Dr. Ghadban opined, without elaboration,
that Plaintiff's GAF was 40.  (Tr. 372A.)  The Tenth Circuit has
repeatedly noted that "[s]tanding alone, a low GAF score does not
necessarily evidence an impairment seriously interfering with a
claimant's ability to work" because "the claimant's impairment .
. . might lie solely within the social, rather than the
occupational, sphere."  *Lee v. Barnhart*, 117 Fed.Appx. 674, 678
(10th Cir. 2004); *see also Eden v. Barnhart*, 109 Fed.Appx. 311,
314 (10th Cir. 2004); *Zachary v. Barnhart*, 94 Fed.Appx. 817, 819
(10th Cir. 2004); *Lopez v. Barnhart*, 78 Fed.Appx. 675, 678 (10th

Cir. 2003).  In other words, "a GAF score of 40 may indicate
problems that do not necessarily relate to the ability to hold a
job." *Lopez*, 78 Fed.Appx. at 678.  Therefore, where, as here,
the GAF score is not accompanied by an opinion indicating that
the claimant cannot work, the ALJ is not even required to
specifically discuss a GAF score of 40.  *See id.* (holding that,
where the examining physician did not indicate that claimant
cannot work, the ALJ did not err by failing to discuss GAF score
of 40 because the score was not significantly probative evidence
in opposition to the ALJ's ultimate conclusions).   Accordingly,
the ALJ did not err in his treatment of Dr. Ghadban's opinion.

     Regarding Dr. Graham's opinion (in the form of a checked
box) that Plaintiff could not work due to his bipolar disorder,
the ALJ discussed why he declined to give that opinion
significant weight.  (Tr. 24, 359.)  The ALJ noted that the sole
basis for Dr. Graham's opinion was Plaintiff's "very remote"
hospitalization in 2001 – "[t]here is no indication that this
doctor performed any significant independent examination or
evaluation of the claimant's mental condition."  (Tr. 24, 359.)
In fact, shortly after Dr. Graham checked the box indicating that
Plaintiff's mental condition precluded employment, Dr. Graham
revealed that he actually had "no info" about Plaintiff's mental
condition because he was not the treating physician.  (Tr. 24,
361.)  The ALJ did not err in failing to give significant weight
to Dr. Graham's contradictory and conclusory opinions regarding

the effect of Plaintiff's mental condition on his ability to work. *See Bean*, 77 F.3d at 1213 (holding physician's opinion was not entitled to significant weight because it was merely conclusory, with no mention of functional limitations); *Castellano*, 26 F.3d at 1029 (explaining physician's opinion may be rejected if his conclusions are not supported by specific findings; moreover, a physician's opinion is not dispositive on the ultimate issue of disability, which is reserved to the Commissioner); 20 C.F.R. §§ 404.1546, 416.946 (same).

In summary, the court concludes that the ALJ properly treated Dr. Ghadban and Dr. Graham's opinions, and the ALJ sufficiently explained that treatment. As a result, the court rejects Plaintiff's argument.

### C.  Plaintiff's Credibility

Third, Plaintiff argues the ALJ failed to properly evaluate Plaintiff's testimony. The court has carefully reviewed Plaintiff's argument, the ALJ's decision, and the record, and concludes that this argument lacks merit.

The ALJ followed 20 C.F.R. §§ 404.1529 and 416.929 in considering Plaintiff's alleged symptoms. (Tr. 22-24.) In particular, the ALJ considered whether an underlying medically determinable impairment (one that could be shown by medically acceptable clinical and laboratory diagnostic techniques) could reasonably be expected to produce Plaintiff's pain or other symptoms. (Tr. 22.) The ALJ also considered whether the

16

intensity, persistence and effects of the symptoms were
substantiated by the objective medical evidence and, if not,
whether Plaintiff's subjective statements were credible.  (Tr.
22.)  *See, e.g., id.* § 404.1529(c).  In assessing Plaintiff's
credibility, the ALJ consulted the factors outlined in Social
Security Ruling (hereafter "SSR") 96-7p.  (Tr. 23.)

     In his decision, the ALJ first described Plaintiff's
subjective complaints given at the hearing.  (Tr. 23.)  Plaintiff
alleged that he often became angry, wanted to be alone, and
became paranoid around people, especially crowds.  (Tr. 23,
393-94.)  Plaintiff testified that he had trouble concentrating,
and he experienced a "mental block" that stopped him from wanting
to work.  (Tr. 23, 398.)  For these reasons, Plaintiff contended
that he did not believe he could work.  After considering all of
the evidence, the ALJ found that Plaintiff's medically
determinable impairments could reasonably be expected to produce
the alleged symptoms, but that Plaintiff's statements concerning
the intensity, persistence, and limiting effects of these
symptoms were not entirely credible, "in particular his assertion
that he cannot perform the easier work suggested hereafter by the
vocational expert."  (Tr. 23.)

     The ALJ observed that the alleged severity of Plaintiff's
symptoms clashed with the objective medical evidence.  (Tr.
24-25.)  For example, after conducting an extensive psychological
evaluation of Plaintiff, Dr. Truhn concluded that Plaintiff could

understand and remember simple instructions, his GAF score was 55, and he had "the ability to respond appropriately to supervision, co-workers, work pressures, and changes in work setting." (Tr. 24, 290.)  Moreover, Dr. Wehl, a State agency psychological consultant, completed a psychiatric assessment of Plaintiff.  Dr. Wehl concluded that Plaintiff's mental condition imposed only mild impairments, his condition was "non-severe," and he was capable of understanding and following simple instructions but he merely "lacks motivation."  (Tr. 20-21, 24, 333-35.)  Dr. Tong, a State agency medical consultant, also opined that Plaintiff's psychological issues were not severe. (Tr. 24, 358.)  State agency medical consultants

> are experts in the evaluation of the medical issues in disability claims under the Act. . . . [T]hey consider the medical evidence in disability cases and make findings of fact on the medical issues, including, but not limited to, . . . the individual's residual functional capacity. . . .  In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.

SSR 96-6p, 1996 WL 374180.

In addition, the ALJ examined Dr. Ghadban's analysis, which also supported the ALJ's decision.  Dr. Ghadban reported that Plaintiff was "coherent, logical, and goal directed," he was

"cooperative and pleasant," and that his symptoms were "mild."
(Tr. 25, 372-72A.)  Dr. Ghadban concluded that, while Plaintiff's
functioning was unlikely to improve significantly, his mild
symptoms could be maintained and stabilized through medication.
(Tr. 24-25, 372A.)  Because the great weight of the medical
evidence contradicted the Plaintiff's subjective complaints, the
ALJ properly discounted the credibility of Plaintiff's
statements.  *See Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir.
1990) (stating that medical records must be consistent with
nonmedical testimony as to the severity of a claimant's
symptoms).

The ALJ also noted that Plaintiff "has not reported the same
symptoms to the treating and examining psychologists that are
indicated in his testimony."  (Tr. 24.)  For example, in his
interview with Dr. Truhn, Plaintiff reported only mild symptoms.[3]
(Tr. 24, 285-90.)  Dr. Truhn opined that Plaintiff may be
over-reporting his symptoms on the numerical measure or else
underreporting them in the interview.  (Tr. 24, 288.)  In light
of Dr. Truhn's conclusions concerning Plaintiff's GAF score and
his ability to work well with others, it appears Dr. Truhn
concluded that Plaintiff had over-reported his symptoms on the

---

[3]In fact, Dr. Truhn himself remarked on the discrepancy
between Plaintiff's description of his symptoms and his rating of
them on a numerical measure (the "symptom inventory").  (Tr.
288.)

numerical measure, as the ALJ also found.  (Tr. 24, 290-91.).[4]
"Exaggerating symptoms or falsifying information for purposes of
obtaining government benefits is not a matter taken lightly by
[the] Court[.]"[5]  *Talley*, 908 F.2d at 587.  The ALJ properly
determined that the several discrepancies between Plaintiff's
testimony and his statements to physicians substantially
undermined his credibility.  *See, e.g., Bean*, 77 F.3d at 1210
(explaining that claimant's subjective complaints may be
discredited based on inconsistencies in the record); *Kelley v.
Chater*, 62 F.3d 335, 338 (10th Cir. 1995) (upholding ALJ's
finding that claimant's testimony that he needed a two-hour nap
each day was not credible because he failed to report such a
restriction to a physician); *Diaz v. Sec'y of Health and Human
Services*, 898 F.2d 774, 777 (10th Cir. 1990) (stating ALJ could
conclude claimant was not credible as his statements about the
frequency of seizures and lifting capacity varied).

   The ALJ also relied on discrepancies between Plaintiff's
statements about the severity of his symptoms and his description
of his activities in assessing Plaintiff's credibility.  (Tr. 20,
24.)  Plaintiff reported to Dr. Truhn that he regularly drove to

---

   [4]The court notes that when Dr. Truhn asked Plaintiff why he
no longer worked, Plaintiff responded, "I don't know.  Maybe I
fear going back to work or maybe I just don't want to work."
(Tr. 287.)

   [5]The court also notes that the other doctors also did not
note that Plaintiff had reported the severe impairments to which
he later testified.

pick up his girlfriend, drove to a school, shopped, and mowed the lawn. (Tr. 287.) At the hearing, Plaintiff confirmed these activities (Tr. 396-97, 401, 403). The ALJ concluded that these activities were not consistent with Plaintiff's claim that he was so paralyzed by his dislike and fear of people that he could not work outside of the home, and the ALJ was entitled to rely on these inconsistences in assessing Plaintiff's credibility.[6] *See Bean*, 77 F.3d at 1213 (holding that ALJ properly relied on inconsistencies in claimant's report of daily activities, particularly where claimant's alleged functional restrictions became increasingly more severe as her claim progressed through the administrative process); 20 C.F.R. § 404.1529(c)(3)(I); *see generally Lax*, 489 F.3d at 1089 (because the ALJ is in the best position to observe the demeanor of witnesses, the ALJ's credibility findings deserve special deference); *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988) (reviewing court should "generally treat credibility determinations made by an ALJ as binding upon review" where the ALJ has given specific, legitimate reasons for disbelieving the claimant's testimony).

### D.   Family Members' Statements

---

[6]Furthermore, two doctors stated explicitly that Plaintiff's mental condition did not significantly limit his activities of daily living. (Tr. 333-35, 358.)

Finally, Plaintiff asserts that the ALJ committed reversible error because the ALJ failed to mention the testimony of Plaintiff's mother, sister, and niece.

The court first notes that these family members did not testify under oath at the hearing before the ALJ, and the cases cited by Plaintiff in his opening brief deal with whether an ALJ must explicitly mention a witness's sworn testimony; thus, those cases are inapposite here.  In this case, Plaintiff's mother, sister, and niece simply submitted or signed written statements in support of Plaintiff's allegations.

In addition, the written statement upon which Plaintiff principally relies in making his argument was written before Plaintiff's alleged onset date (Tr. 167); thus, as the court discussed above, it was of little value.

In any event, the ALJ is not required to discuss every piece of evidence; instead, the record must reflect that the ALJ considered all the evidence.  *See Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009).[7]  Here, the ALJ stated multiple times that he considered all of the evidence in the record.  (Tr. 17, 21, 23.)  "Where, as here, the ALJ indicates that he has considered

---

[7]Furthermore, as Defendant points out, the family members' opinions as to the severity of Plaintiff's limitations were controverted by Plaintiff's statements as well as by the objective medical evidence.  In addition, their opinions were based in part on Plaintiff's subjective reports of his symptoms, the credibility of which was in doubt.  Thus, the ALJ did not have an affirmative duty to mention the family members' statements.  *See Wall*, 561 F.3d at 1068.

all the evidence [the court's] practice is to take the ALJ 'at [his] word.'"  *Id.* at 1070 (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007)).

**CONCLUSION**

Based on the above analysis, **IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED** because it is supported by substantial evidence and is free of reversible legal error.

DATED this 29th day of September, 2009.

BY THE COURT:

_____
Samuel Alba
United States Magistrate Judge